UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **James E. Moore, as Trustee of the Carpenters and Joiners Welfare Fund, Twin City Carpenters Pension Master Trust Fund, and Twin City Carpenters Vacation Fund; Tim McGough, as Trustee of the Carpenters & Joiners Welfare Fund, Twin City Carpenters Pension Master Trust Fund, and Twin City Carpenters Vacation Fund; and James E. Moore, as Trustee of the Carpenters and Joiners Apprenticeship and Journeyman Training Trust Fund; and each of their successors;** | Civil No. 09-CV-2463 (SRN/JJK) <br><br> **MEMORANDUM AND ORDER** |
| Plaintiffs, | |
| v. | |
| **Advantage Office Services, Inc.; American Office Installations, Inc; and Gregory J. Dodge, individually;** | |
| Defendants. | |

Amanda R. Cefalu, Katrina E. Joseph, and Pamela Hodges Nissen, Anderson Helgen Davis & Nissen, LLC, 150 South Fifth Street, Suite 3100, Minneapolis, Minnesota 55402, for Plaintiffs.

Mark V. Steffeson, Henningson & Snoxell, Ltd., 6900 Wedgwood Road, Suite 200, Maple Grove, Minnesota 55311, for Defendants.

---

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiffs' Amended Motion for Summary Judgment. [Doc. No. 21]. As stated at the hearing, and for the reasons that follow, the Motion is denied.

I.   **BACKGROUND**

Plaintiffs are the trustees of several multi-employer fringe benefit funds.  Two of the Defendants are companies that assemble and install commercial office furniture, American Office Installations, Inc. ("American"), and Advantage Office Services, Inc. ("Advantage").  The third Defendant, Gregory Dodge, is half-owner of both companies.  He serves as President of American, and Vice President and Secretary-Treasurer of Advantage.

In 1997, Advantage agreed to be bound by the collective bargaining agreement ("CBA") between the Lakes and Plains Regional Council of Carpenters and Joiners of the United Brotherhood of Carpenters and Joiners of America (the "Union") and the Carpentry Contractors Association and Minnesota Drywall and Plaster Association.  (Wolf Aff Ex. A (CBA); Ex. B (Agreement between Advantage and the Union).)  In the Agreement, Advantage "specifically agree[d] to be bound by all provisions with regard to fringe benefits . . . ." (Id. Ex. B at 1.)  Further, by signing the Agreement on behalf of Advantage, Dodge agreed "to be bound individually to the full and faithful performance of all the terms and provisions" of the Agreement.  (Id. at 2.)

Dodge formed Advantage and American within days of each other in 1988.  He contends that, since the beginning, these companies were intended to be "double-breasted" companies: at a customer's behest, one could perform union work and the other could perform non-union work.[1]  In 2005, Dodge's companies merged with two "double-breasted" companies owned by

---

[1] A double-breasted operation occurs when the same owner owns both a union and a non-union company.  The non-union company bids on jobs that do not require a union contractor, while the union company bids on union jobs.  Both companies can thus bid more competitively in their respective markets.  Double-breasted

Matthew McKay and McKay became half owner of both Advantage and American. McKay is the President of Advantage and the Vice President and Secretary-Treasurer of American. He is not a signatory to the Agreement at issue and is not named as a Defendant in the Complaint.

At the heart of Plaintiffs' allegations is their contention that Dodge formed the two separate companies to avoid his and Advantage's obligations under the CBA, and that the two companies are alter egos of each other, so that Advantage is liable for the hours worked by American's employees. Plaintiffs contend that an audit of the two companies' time records reveals that Advantage owes more than $1.5 million in unpaid fringe benefit contributions to the funds. They ask the Court to determine that, as a matter of law, the companies owe the funds $1,578,502.32 in unpaid fringe benefit contributions, plus liquidated damages of 10% of this amount and/or prejudgment interest,[2] plus attorney's fees and costs in an amount to be determined.

Defendants dispute that American and Advantage are alter egos. They also argue that, if the Court does find that the companies are alter egos so that Advantage must make fringe benefit contributions on behalf of American, the Court should decline to grant summary judgment on the precise amounts owed. According to Defendants, Plaintiffs' calculations were untimely disclosed and do not take into account that some supervisory and administrative employees were not covered by the CBA.

---

operations in the construction industry are not inherently illegal under the NLRA.

C.E.K. Indus. Mech. Contractors, Inc., v. N.L.R.B., 921 F.2d 350, 352 n.3 (1st Cir. 1990).

[2] The heading of this section of Plaintiffs' brief also requests "double interest" but the discussion does not mention double interest. (Pls.' Am. Supp. Mem. at 15 [Doc. No. 22].)

## II.   DISCUSSION

### A.   Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).  However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Id. at 323; Enter. Bank, 92 F.3d at 747.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

### B.   Alter Ego

If American and Advantage are alter egos, then both companies are bound by the CBA and Advantage must pay fringe-benefit contributions on behalf of American's employees.  See Trustees of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal, 516 F.3d 719, 727 (8th Cir. 2008) (noting that only the signing party can be bound to collective bargaining agreement unless the corporate law doctrine of alter ego applies).  To determine whether American and Advantage are alter egos the Court examines whether one of

the companies "(1) is controlled by another to the extent that it has independent existence in form only and (2) is used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud." Greater Kansas City Laborers Pension Fund v. Superior Gen. Contractors, Inc., 104 F.3d 1050, 1055 (8th Cir. 1997).[3]

Plaintiffs contend that American and Advantage had no independent existence. The two companies operated out of the same office, the ownership of the companies was the same, and they used the same person to assign and schedule employees. But other facts belie the allegedly intertwined nature of the two companies. The companies maintained separate books, paid employees separately, paid separate taxes, maintained separate mailing addresses and checking accounts, did not share tools or supplies, and performed different types of services, albeit in the same general industry.

The cases on which Plaintiffs rely for their argument on the first prong of the alter-ego test are factually distinguishable. In one, the non-union company was formed years after the union company, and the union company very shortly thereafter ceased doing business. Operating Eng'rs Local No. 101 Pension Fund v. K.C. Excavating & Grading, Inc., No. 01-87, 2002 WL 1492103 (W.D. Mo. Mar. 11, 2002). In another, the two companies were covered by a single insurance company, had a single checking account, paid wages and fringe benefit contributions from the single checking account, reported combined wage and tax totals for the two companies to the IRS in quarterly filings, and maintained a loan financing agreement

---

[3] Advantage urges the Court to apply Minnesota law on piercing the corporate veil in determining whether Advantage and American are alter egos. It is clear, however, that the Court should apply "general 'corporate law principles to determine employer liability under ERISA . . . .'" Bjorkedal, 516 F.3d at 727 (quoting Superior Gen., 104 F.3d at 1050).

whereby one company loaned the other company all of its operating funds.  Brady v. Borchart Indus., Inc., Civ. No. 05-1386, 2006 WL 3043138, at *1-2  (D. Minn. Oct. 25, 2006) (Montgomery, J.).  Similarly, in another case, two companies were alter egos for the purposes of fringe benefit contributions under a CBA when they functioned as a single entity, loans from the owner of one business to the other business were accounted for as loans from an officer or shareholder, the companies "leased" employees to each other but had no written agreement to support that arrangement, and the companies shared a bookkeeper, office space, employees, and equipment, with no record of one company billing the other for these resources.  Seipel v. Arrowhead Indus. Serv., Inc., Civ. No. 07-3864, 2010 WL 605722, at *2-3 (D. Minn. Feb. 11, 2010) (Schiltz, J.).

Conversely, in a case more factually similar to the instant matter, disputes of fact as to whether two companies were alter egos of each other precluded summary judgment on that issue. Seipel v. John Heinlein Constr., Inc., Civ. No. 07-4643, 2009 WL 1405223 (D. Minn. May 18, 2009) (Frank, J.).  In Heinlein Construction, the two companies used the same office space, with one "renting" the space from the other in exchange for the use of the other company's bookkeeper, and the companies shared equipment and vehicles.  But the companies made separate purchases of materials, separately bid and entered into contracts, and had separate bank accounts, insurance policies, and tax returns.  Id. at *2. Defendants in that case argued, as Defendants do here, that the parties were "'double-breasted' legal entities with different focuses[:]" one company used union labor for commercial projects and one used non-union labor for decorative residential projects.  Id. at *4.

Although the parties cross-moved for summary judgment, Judge Frank determined that

the record revealed issues of material facts that made summary judgment inappropriate.  Id. at *5.  Those same sorts of issues of material facts exist in this case.  The evidence shows that Advantage typically handles larger commercial projects and American handles smaller projects, and that Advantage and American pay their employees separately and issue separate W-2s for their respective employees, in addition to the other facts mentioned above.

Plaintiffs contend that Defendants admitted that American lends Advantage money with no written agreement, but in fact the deposition testimony only shows that it would be possible for Advantage to use American's line of credit, not that Advantage has ever done so.  (Cefalu Aff. Ex. F at 30 (Ries Dep.).)  Plaintiffs also argue that Dodge admitted that he determines whether the job will be union and done by Advantage or non-union and handled by American.  But this is contradicted by Dodge's deposition testimony.  Indeed, Dodge testified unequivocally that the individual customer determines whether the job must be union or non-union (id. Ex. A at 11 (Dodge Dep.)), and every other American and Advantage employee testified the same way.

There are genuine issues of fact as to whether American and Advantage were alter egos.  Those factual issues preclude summary judgment, and Plaintiffs' Motion must be denied.

**C.      Remaining Issues**

Because the Court declines to grant summary judgment on the issue of alter ego liability, the issues of the amounts due, attorney's fees, and laches are not ripe for consideration.  Summary judgment on these issues is likewise denied.

## III.     CONCLUSION

Genuine issues of material fact remain for resolution as to whether the Defendant companies are alter egos.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Amended Motion for Summary Judgment [Doc. No. 21] is **DENIED**; and
2. The parties are **ORDERED** to hold a settlement conference with Magistrate Judge Keyes within 60 days.

Dated:   June 6, 2011

                                           s/Susan Richard Nelson
                                           SUSAN RICHARD NELSON
                                           United States District Judge